**William LaBARR, Plaintiff,**

v.

**BOARD OF EDUCATION OF the UNION FREE SCHOOL DISTRICT # 1, TOWN OF HEMPSTEAD, NASSAU COUNTY, NEW YORK, et al., Defendants.**

No. 75 C 848.

United States District Court, E. D. New York.

Jan. 20, 1977.

Eugene M. Kaufman, New York City, for plaintiff.

Gilbert Henoch, Hempstead, for defendants.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

Plaintiff, a discharged probationary high school teacher for the Union Free School District, Town of Hempstead, commenced this action under the Civil Rights Act, 42 U.S.C. § 1983, challenging on due process grounds the termination of his employment. He seeks a permanent injunction enjoining defendants from terminating his services, reinstatement *nunc pro tunc* and back pay. The parties have cross-moved for summary judgment. Rule 56, F.R.Civ.P.

The material facts, as developed by the following chronology, are not in genuine dispute. Plaintiff was appointed a probationary high school teacher by the Board of Education of the Hempstead School District (the "Board") with a probationary term of three years commencing December 4, 1969.

In June 1972 the Superintendent of Schools (the "Superintendent") recommended to the Board that plaintiff be discharged because of unsatisfactory performance. On July 5, 1972 the Board voted to terminate plaintiff's probationary employment, and he was discharged. He has not performed any services for the Board since that date.

The Board's decision would have been dispositive but for the enactment in June 1972 of a new provision of the New York Education law, requiring a Board of Education to give a probationary employee 30 days notice of its intent to discontinue his services. The new law, which was declared effective in July 1972, entitled the employee to receive, upon request, a statement of the Board's reasons and to reply in writing. N.Y.Educ.L. § 3031.[1]

Plaintiff then commenced, in October 1972, an Article 78 proceeding, CPLR § 7801 et seq., in the State court to review the determination of the Board, asserting that the Board had failed to follow the 30-day notice provision referred to above. The Board conceded it had not followed the statute but argued that the provision did not apply because the Superintendent's recommendation had been given to the Board prior to the effective date of the statute. On November 22, 1972 plaintiff's motion for a judgment declaring the Board's actions null and void and ordering reinstatement was orally granted. Judgment was entered to that effect on December 5, 1972 provid-ing for reinstatement and back pay from September 1, 1972. The Board appealed this judgment.

In the interim, the Superintendent, following the new statute, notified plaintiff on November 3, 1972 that he would again recommend plaintiff's dismissal at the Board's December 5, 1972 meeting. Plaintiff was furnished, as he requested, a list of reasons for the discharge. At the Board meeting plaintiff appeared and asserted to the Board that it could not dismiss him summarily because he had acquired tenure, the three-year period from commencement of the probationary term having expired one day earlier, December 4. The Board decided to table the motion pending the outcome of its appeal. On July 9, 1973, the Appellate Division affirmed the judgment in plaintiff's favor, ordering reinstatement and back pay, with the modification that the Board was entitled to an offset for any monies earned by plaintiff post-termination. *LaBarr v. Motoyama,* 42 A.D.2d 733, 346 N.Y.S.2d 107 (2d Dept. 1973).

On October 29, 1973, the Board, finding that its prior November notice to plaintiff satisfied the statutory provisions, again voted to discontinue plaintiff's employment. Plaintiff thereupon brought a second Article 78 proceeding asserting that he had acquired tenure by estoppel and thus could not be summarily discharged. The Supreme Court, Special Term, dismissed the petition on November 8, 1973, holding

1. Section 3031 provides:

§ 3031. Procedure when tenure not to be granted at conclusion of probationary period or when services to be discontinued.

*Notwithstanding any other provision of* this chapter and except in cities having a population of one million or more, boards of education and boards of cooperative educational services shall review all recommendations not to appoint a person on tenure, and, teachers employed on probation by any school district or by any board of cooperative educational services, as to whom a recommendation is to be made that appointment on tenure not be granted or that their services be discontinued shall, at least thirty days prior to the board meeting at which such recommendation is to be considered, be notified of such intended recommendation and the date of the board meeting at which it is to be considered. Such teacher may, not later than twenty-one days prior to such meeting, request in writing that he be furnished with a written statement giving the reasons for such recommendation and within seven days thereafter such written statement shall be furnished. Such teacher may file a written response to such statement with the district clerk not later than seven days prior to the date of the board meeting.

This section shall not be construed as modifying existing law with respect to the rights of probationary teachers or the powers and duties of boards of education or boards of cooperative educational services, with respect to the discontinuance of services of teachers or appointments on tenure of teachers.

"that tenure was not acquired by estoppel, since petitioner has not performed any services as a teacher since the expiration of his probationary term (see *Matter of Gunthorpe v. Board of Educ.,* 41 Misc.2d 757, 758, 759, 246 N.Y.S.2d 462)."
The Appellate Division subsequently affirmed without opinion. *LaBarr v. Board of Education,* App.Div., 358 N.Y.S.2d 669 (2d Dept. 1974).

Plaintiff then filed this action alleging that his dismissal violated due process of law.

 In order to be afforded the constitutional protection of due process of law, absent any claim of violation of first amendment rights or deprivation of any liberty interest, as here, an employee of the State or its subdivisions must have a property interest in continued employment. *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The test to determine what constitutes a property interest for due process purposes, first enunciated in *Roth,* is whether plaintiff may invoke

"existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure benefits and that support claims of entitlement to those benefits." 408 U.S. at 577, 92 S.Ct. at 2709.

The unilateral expectation of continued employment is not sufficient to create such a property interest. *Id.* Looking to New York law as required, see *Bishop v. Wood,* *supra,* 96 S.Ct. at 2077–78, it is clear that if plaintiff had acquired tenure, he was entitled to due process protection of notice of charges and hearing pursuant to N.Y. Educ.L. §§ 3012, 3020–a,[2] but if he were a probationary employee, then he could be summarily discharged so long as the procedures of N.Y.Educ.L. § 3031[3] were followed.

Plaintiff's claim that he has acquired a property interest in his employment is two-pronged: (1) that he has obtained tenure by estoppel and (2) that actions of the Board and State courts gave him the justified expectation of continuance in his position. Both claims are ill-founded.

In support of his claim to tenure by estoppel, plaintiff argues that by virtue of his reinstatement under the 1972 Article 78 judgment, he was employed past December 4, 1972, the end of his probationary term, with knowledge and acquiescence of the Board, and therefore acquired tenure by operation of law.

 Whether plaintiff obtained tenure is a question of State law. "[T]he sufficiency of the claim of entitlement [to a property interest in employment] must be decided by reference to state law." *Bishop v. Wood,* *supra,* 96 S.Ct. at 2077–78. Under New York law a teacher may acquire tenure in either of two fashions. First the Board, upon recommendation of the Superintendent, may explicitly confer tenure, N.Y. Educ.L. § 3012. Secondly, the Board may be estopped from dismissing a teacher by its own failure to take the action required by law to grant or deny tenure, *i.e.,* where a teacher continues to teach beyond the expi-

---

**2.** Section 3012 provides in part:
 2. At the expiration of the probationary term of a person appointed for such term, subject to the conditions of this section, the superintendent of schools shall make a written report to the board of education recommending for appointment on tenure those persons who have been found competent, efficient and satisfactory. Such persons, and all others employed in the teaching service of the schools of such union free school district, who have served the probationary period as provided in this section, shall hold their respective positions during good behavior and efficient and competent service, and shall not be removed except for any of the following causes, after a hearing, as provided by section three thousand twenty-a of such law: (a) insubordination, immoral character or conduct unbecoming a teacher; (b) inefficiency, incompetency, physical or mental disability, or neglect of duty; (c) failure to maintain certification . . . . .
 Section 3020–a sets forth the procedure to be followed for removal of a tenured teacher.

**3.** See *supra* note 1.

ration of the probationary term, with knowledge and consent of the Board, and continues to be paid for his services. *Matter of Downey*, 72 State Dept. Reports 29 (1951), cited in *Gunthorpe v. Board of Education*, 41 Misc.2d 757, 246 N.Y.S.2d 462 (Sup.Ct.1963).

■ Recognizing that tenure laws are in derogation of common law freedom to contract, the State courts have strictly construed them and will recognize a tenure gained through estoppel only if the teacher has rendered actual service beyond the term of probation. *Mugavin v. Nyquist*, 48 App. Div.2d 727, 367 N.Y.S.2d 604 (3rd Dept. 1975), *aff'd*, 39 N.Y.2d 1003, 387 N.Y.S.2d 241 (1976); *Gunthorpe v. Board of Education, supra.*

■ Here the Board did not acquiesce in or consent to plaintiff's continuance in employment in any way, albeit pursuant to court order plaintiff was paid for the 1972–73 school year. Plaintiff performed no services for the School District from the time of the Board's initial determination to dismiss him in July 1972. He was never reinstated in his teaching position. The Board neither accepted any benefit from plaintiff which it should now be precluded from denying nor did plaintiff change his position in reliance on the Board's conduct. A reading of State law offers no other conclusion but that plaintiff never obtained tenure by estoppel.

■ Moreover, the question whether plaintiff acquired tenure by estoppel under New York law has already been decided adversely to him in the second State Article 78 proceeding. The court then ruled that plaintiff had not acquired tenure because he had not performed any services as teacher since the July 1972 discharge. He may not relitigate this claim in federal court. See *Ritchie v. Landau*, 475 F.2d 151 (2 Cir. 1973).

Plaintiff does not seek to present new facts to attack the basis for the State's prior factual determination as was the case in *Lombard v. Board of Education of City of New York*, 502 F.2d 631 (2 Cir. 1974), but rather to have a federal court redetermine New York law, once the State court has ruled on the legal issue. Although the State proceeding did not determine the question of tenure in the context of a due process challenge, a conclusion that plaintiff had obtained tenure was a necessary prerequisite to success on the due process claim here. The State court's definitive pronouncement denying tenure forecloses any attempt by plaintiff to relitigate this question of State law in federal court. The first claim of denial of due process based on acquisition of tenure by estoppel must fail.

Plaintiff's second argument, which essentially is that he was led to believe his services would be continued and therefore gained a property interest in employment is similarly without merit. His expectation is based on (1) the State court's order granting him reinstatement in November 1972, (2) the failure of the Board to dismiss him between the November 22 court decision and the December 5, 1972 Board meeting, and (3) the Board's decision at that meeting to put off any action until resolution of its appeal.

■ The November 1972 order of reinstatement and back pay could not reasonably have given plaintiff an expectation that he would not be discharged as it did not alter, comment on or augment his probationary status. Mere passage of time, without rendition of services could not automatically convert him to a tenured employee.

Secondly, the Board could not have dismissed him between November 22 and December 5, 1972 without again disobeying the 30-day notice provisions. Plaintiff's Article 78 proceeding was not commenced until October 1972, more than three months after the Board's dismissal. The earliest possible Board meeting thereafter was the December 5 meeting.

Finally, the Board's decision at the December 5 meeting to table the question of plaintiff's termination pending the outcome of its appeal could not justify his belief in continuing employment. The Board's con-

sistent position was that plaintiff was a probationary employee, rightfully discharged. Plaintiff did not teach in that period or at any time subsequent to July 1972. Plaintiff's argument that the affidavit of the past president of the Board of Education supports his position is simply not tenable. She stated that, when faced with plaintiff's assertion at the December 5 meeting that he had acquired tenure, "the Board decided to refrain from any decision dismissing him" until the appeal was decided. Plaintiff interprets this to imply that if the appeal were not successful the Board would continue him. In view of the Board's evident desire to dismiss him, this reading is not supportable. In addition, plaintiff could not possibly have relied on *that* statement in setting his hopes, as it was made more than nine months following the Board meeting in question and only in connection with plaintiff's second Article 78 proceeding challenging his second dismissal. Neither the Board nor the State court dealt with plaintiff in such a fashion as to create a mutual expectation of employment. The second prong of the due process claim must also fail.

Accordingly, plaintiff's motion for summary judgment is denied and defendant's motion for summary judgment is granted.

SO ORDERED.